UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

RONALD JEFFERIES,                        )
                                         )
    Petitioner,                          )   Civil Action No. 15-CV-035-HRW
                                         )
v.                                       )
                                         )
                                         )   **MEMORANDUM OPINION**
JODIE L. SNYDER-NORRIS,                  )   **AND ORDER**
*Warden*,                                )
                                         )
                                         )
    Respondent.                          )

***** ***** ***** *****

Ronald Jefferies is an inmate confined in the Federal Correctional Institution at Ashland, Kentucky. Proceeding *pro se*, Jefferies has filed a petition for writ of habeas corpus pursuant to 28 U. S. C. § 2241, seeking the expungement of a disciplinary conviction and the restoration of 40 days of good conduct time credit to his prison sentence. [R. 1] Jefferies has paid the requisite $5.00 filing fee. [R. 3]

The Court conducts an initial review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). The Court must deny the petition "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court evaluates Jefferies' petition

under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the petitioner's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

Because Jefferies' conviction is supported by some evidence, the Court concludes that he is not entitled to the relief he seeks and will dismiss his § 2241 petition. The rationale for this decision is set out below.

## BACKGROUND

### I. Disciplinary Charge, Conviction, and Administrative Appeals

On July 30, 2010, Jefferies was an inmate at the Federal Correctional Institution located at Talladega, Alabama ("FCI-Talladega"). On that day, a major disturbance/riot occurred at the prison. At the completion of a lengthy investigation following this disturbance, on September 7, 2010, Jefferies was charged with the Possession of a Weapon, a Code 104 violation. [R. 1-1]. The incident report charging that violation states, as follows:

> On Tuesday, September 7, 2010, at 2:00 p.m., an investigation was completed which determined that you participated in a major disturbance on July 30, 2010, by assaulting another person. Specifically, you were observed on surveillance cameras with a sharpened instrument in your right hand. As the assault on inmate Joseph Jones, Reg. No. 42214-007 by inmate Crawford, Reg. No. 97072-020 and inmate Welch, 05985-003 continued to C-Range, you proceeded quickly to that range and administered a number of quick

2

strikes to inmate Jones body stabbing him with the sharpened instrument in your right hand. As a result of this assault, inmate Jones received abrasions to his neck, chest, face, and forehead, as well as, seven (7) puncture wounds in multiple areas.

[R. 1-1].

By the time Jefferies was charged with this offense, he had been transferred to the Federal Correctional Institution located in Yazoo City, Mississippi ("FCI-Yazoo City"). The Incident Report issued at FCI-Talladega was sent to FCI-Yazoo City for processing. Jefferies received a copy of this Incident Report at FCI-Yazoo City on September 13, 2010, at 11:20 a.m. [R. 1-1].

This matter was referred to a Disciplinary Hearing Officer ("DHO") for hearing, which was conducted on November 23, 2010, at 7:40 a.m. [R. 1-2, p. 1]. Jefferies appeared at the DHO hearing, along with his staff representative, Lieutenant J. Hutchins, who was appointed to assist Jefferies in this matter. *Id.* Jefferies stated that he was ready to proceed, that he understood his rights before the DHO, and that he had received his copy of the Incident Report. *Id.* Jefferies had requested three witnesses to appear in his defense. One of his three witnesses, Karee Sapp, appeared and testified in Jefferies' defense, stating that Jefferies had nothing to do with the incident. *Id.* The other two witnesses Jefferies had requested, Sean Crawford and Frank Welch, did not appear at the DHO hearing. Jefferies waived the in-person testimony of these two witnesses, as the DHO explained in detail in his report, as follows:

> Inmate Jefferies agreed to waive in person testimony of two of his requested witnesses (Crawford and Welch), provided the DHO would stipulate and consider that their testimony would state that he (inmate Jefferies), was innocent of the charge of possession of a weapon. The DHO acknowledges that both would state that inmate Jefferies was not involved in the fight that took place on July 30, 2010, at 8:05 p.m., at FCI Talledga and that he did not have a weapon.
>
> It is noted that all of inmate Jefferies requested witnesses have been housed in the cell adjacent to him for weeks and would have had ample time to discuss their testimony. The DHO also believes that it would have been unlikely, that inmate Jefferies requested witnesses would have provided testimony favorable to the reporting staff member.

[R. 1-2, p. 2].

Jefferies denied the charge of Possession of a Weapon. He stated, "I was not holding a knife. It wasn't me. They got the wrong inmate. I would like the video tape to be saved." *Id.*

In addition to the Incident Report, the DHO also considered the SIS investigative report, the testimony of Jefferies and Karee Sapp at the DHO hearing, and the e-mails from Robert McQueen, Case Manager, and Robert Rowan, Unit Counselor, dated November 12, 2010. *Id.* The DHO summarized what transpired at the DHO hearing, and the reasons for his findings in Section V. of his report, as follows:

> It is noted that DHO was done for FCI Talledga, due to inmate Jefferies, who is currently designated at FCI Talledga, being housed at FCC Yazoo City. The Incident Report was written on September 7, 2010, and then mailed to FCC Yazoo City. The Incident Report arrived on September 13, 2010, and was then issued to inmate

Jefferies. Hence the reason for the Incident Report being issued beyond the recommended 24 hour time frame.

The DHO finds that on July 30, 2010, at or about 8:05 p.m., you committed the prohibited act of Possession of a Weapon, Code 104. The DHO relied on the written report from SIS Lieutenant who stated an investigation was completed which determined that you participated in a major disturbance. Specifically, you were observed on surveillance cameras with a sharpened instrument (shank) in your right hand.

In your defense, you deny the charge of Possession of a Weapon. You stated to the DHO, "I was not holding a knife. It wasn't me. They got the wrong inmate. I would like the video tape to be saved."

The DHO considered the SIS Investigative report which stated during review of the surveillance cameras from Sigma B Unit, you were observed by Robert McQueen, Case Manager, Robert Rowan, Counselor, Allen Harris, Unicor Foreman, and James Preston, SIS Lieutenant, to be carrying what appeared to be a 'shank' in your right hand. It further stated that you keep the weapon close to your right side and proceeded to C-range.

The DHO contacted Robert McQueen, Case Manager, and Robert Rowan, Counselor, and asked them if they positively identified you with a shank. They both verified that they positively identified you carrying a shank.

Your staff representative, J. Hutchins, Lieutenant, was present. He was asked during your hearing if he wanted to make a statement, and he stated, "I have spoken with inmate Jefferies several times concerning his charge."

The DHO also considered your witnesses' statement. All three of your requested witnesses stated that you were not involved in the incident.

Although your witnesses' statements were supportive, the DHO found the staff member's statement more credible as the DHO believes they

5

may not have revealed their entire knowledge of the incident, in order to support you against the charges of the staff member.

The DHO believes that you committed the prohibited act of Code 104. The decision was based on the written report from SIS Lieutenant who stated an SIS Investigation was completed, which determined that you participated in a major disturbance. Specifically, you were observed on surveillance cameras with a sharpened instrument (shank), in your right hand. The DHO notes that four staff members verified (via video surveillance), that it was in fact you, holding a shank during the fight that took place at FCI Talladega, on July 30, 2010. Weapons can only be used for illegal purposes and therefore, cannot and will not be tolerated.

Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

[R. 1-2, pp. 3-4].

DHO Mark Gennaro imposed the following sanctions: 60 days of Disciplinary Segregation; disallowance of 40 days Good Conduct Time; and Recommend Disciplinary Transfer. [R. 1-2, p. 4]. The DHO's report was issued on November 24, 2010, and reflects that it was delivered to Jefferies on December 1, 2010, at 3:00 p.m. *Id.*

Jefferies states that he appealed the DHO's decision to the BOP's Southwest Regional Office on December 14, 2010, and that his appeal was rejected because (1) he had failed to complete Part A of the BP-10 form, and (2) not all pages of the BP-10 form were legible. Jefferies states that he corrected and resubmitted the BP-10 form on January 15, 2011. [R. 1-4, p. 2]. Apparently, while Jefferies' appeal was pending at the Regional Office, he was transferred to FCI-Lompoc. *Id.*

6

Jefferies' habeas petition is unaccompanied by a copy of the decision of the BOP's Regional Office on his appeal of his disciplinary conviction. However, since Jefferies later appealed this disciplinary conviction to the BOP's Central Office, the Court presumes that the BOP's Regional Office denied his appeal. On January 8, 2014, the Central Office rejected Jefferies' appeal because (1) he did not sign the appeal, (2) he did not include a copy of his BP-10 submitted to the Regional Office and the Regional Office's response of the BP-10 with his appeal, and (3) his appeal was untimely, having been submitted more 30 days after the denial of his appeal to the Regional Office. [R. 1-4]. However, Jefferies was afforded the opportunity to resubmit his appeal to the Central Office and to provide a memorandum from prison staff explaining the reason for the untimely appeal to the Central Office. *Id.* Jefferies resubmitted his appeal to the Central Office, but on April 21, 2014, it was rejected because he failed to include a copy of his BP-10 filed with the Regional Office and a copy of the Regional Office's response to his BP-10. [R. 1-5]. The Central Office gave him fifteen days in which to resubmit his appeal with the omitted documentation. *Id.* Based on the attachments to Jefferies' petition, there is no indication that Jefferies cured this deficiency and resubmitted his appeal to the Central Office. However, out of an abundance of caution, the Court will presume that Jefferies has fully exhausted his administrative remedies and will proceed to review this petition on the merits.

7

## II.   Claims Asserted in § 2241 Petition

As grounds for his petition, Jefferies claims that he did not receive a copy of the DHO's report until August of 2013, long after the time for appealing had expired, and that there was insufficient evidence to convict him of the charged offense. [R. 1, p. 3].

## DISCUSSION

Prisoners sanctioned with the loss of Good Time Credit ("GTC") are entitled to some due process protection. *Wolff v. McDonnell*, 418 U.S. 539, 556, (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). The due process to which a prisoner is entitled includes: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id.*

The essence of Jefferies' claim is that he was misidentified on the videotape as the inmate who assaulted another inmate during a prison riot and that the object he was carrying in his right hand was a trash bag, not the shank as he was accused of carrying. Consequently, he contends that he was wrongly convicted of the charged offense and erroneously sanctioned for that offense, requiring a reversal of the sanctions.

Jefferies' argument ignores the fact that pursuant to *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445 (1985), a disciplinary conviction must be upheld as consistent with due process as long as there is "some evidence" to support the decision. *Id.* at 454-55. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

In this case, there was "some" evidence to support Jefferies' disciplinary conviction. That evidence consisted of the September 7, 2010, Incident Report, issued at the completion of the investigation of a prison riot that occurred on July 30, 2010, in which SIS Lieutenant James Preston charged Jefferies with the Possession of a Weapon, a Code 104 violation, on July 30, 2010, while participating in a prison riot, and assaulting another inmate, Joseph Jones. In addition to the SIS Investigative report, the evidence also consisted of videotapes from surveillance cameras in Jefferies' unit, Sigma B Unit. From these videotapes, Jefferies was identified by Robert McQueen, Case Manager; Robert Rowan, Counselor; Allen Harris, Unicor Foreman, and James Preston, SIS Lieutenant, as the person carrying what appeared to be a 'shank' in his right hand. In considering this matter, the DHO reported that he contacted Robert McQueen, Case Manager, and Robert Rowan, Counselor, about this charge against Jefferies. In response to the DHO's inquiry, McQueen and Rowan "positively identified" Jefferies on the videotapes as the person carrying the shank. [R. 1-2, p. 3]

Although the Incident Report, the SIS Investigative Report, the videotapes, and the statements of prison officials Robert McQueen, Case Manager, and Robert Rowan, Counselor, who positively identified Jefferies as the person in the videotapes who was carrying a weapon, are not complete evidence of guilt, and although Jefferies disputes the charge contained in the Incident Report, DHO Gennaro was free to assign greater weight to the Incident Report, the SIS Investigative Report, and the reports from prison officials who positively identified Jefferies as the person in the videotapes, than he assigned to Jefferies' evidence, *viz.*, the testimony from inmate Karee Sapp favorable to Jefferies, the other two inmates who would have offered similar favorable testimony to Jefferies, and Jefferies own claim that he was simply misidentified in the videotapes and that he was not carrying a weapon, but a trash bag. DHO Gennaro did just that, and in doing so, he did not violate Jefferies' right to due process of law.

A district court has no authority under the guise of due process either to review the resolution of factual disputes in a disciplinary decision, to weigh the credibility of the witnesses, to second-guess the DHO or to substitute its judgment for that of the DHO. So long as there is "some evidence" to support the DHO's finding, the Court is obligated to uphold the DHO's decision. The role of the district court is to ensure that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent*, 472 U.S. at 457. Even meager proof is

sufficient under the "some evidence" standard. *Webb*, 224 F.3d at 652. "[T]he full panoply of rights due a defendant [in a criminal prosecution] does not apply" with regard to inmate disciplinary hearings. [*Id.*]

Thus, the Incident Report, the SIS Investigative Report, the statements from prison officials Robert McQueen, Case Manager, and Robert Rowan, Counselor, who positively identified Jefferies as the person in the videotapes who was carrying a weapon, constituted "some" evidence upon which DHO Gennaro could reasonably rely in finding Jefferies guilty of the charged offense. Jefferies did receive due process and received all the process to which he was due, as there was "some evidence" to support the decision to find him guilty of the Code 104 violation, and the sanctions imposed are commensurate with that offense. *See Cosgrove v. Rios*, No. 7:08–CV–109–KKC, 2008 WL 4706638, at *4 (E.D. Ky. Oct. 21, 2008) (finding that DHO's review of reports and memoranda constituted "some evidence" and was enough to support the finding of guilt, imposition of sanctions, and revocation of the inmate's GTC).

Concerning Jefferies' claim that he was denied due process by the untimely receipt of the DHO's report in August of 2013, resulting in his inability to appeal his conviction, the Court finds Jefferies' argument unpersuasive for the following reasons. First, The DHO report itself states that it was delivered to Jefferies on December 1, 2010, at 3:00 p.m. [R. 1-2, p. 4]. Second, the fact that Jefferies

11

appealed his disciplinary conviction to the Regional Office on January 13, 2011, [R. 1-5, pp. 4-5], refutes Jefferies' claim that he did not receive the DHO's report until August of 2013, after the time for appeal had expired. Following the Regional Office's denial of Jefferies' appeal, he appealed his conviction to the Central Office, and after it was rejected, he was given the opportunity to resubmit the appeal. For all of these reasons, the Court concludes that Jefferies' due process rights were not violated.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. Ronald Jefferies' 28 U.S.C. § 2241 petition for a writ of habeas corpus [R. 1] is **DENIED**.

2. The Court will enter an appropriate judgment.

3. This matter is **STRICKEN** from the active docket.

This 13th day of October, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
**United States District Judge**